HEARD JUNE, 1876.

*Ex Parte* LILLY.

Where the term of a Circuit Court, as fixed by law, has expired, the Judge has no power, by order, to continue its existence, convene it at another time, and proceed to the trial of cases.

BEFORE MACKEY, J., AT CHESTER, JANUARY, 1876.

This case is stated in the opinion of the Court.(*a*)

July 1, 1876.   The opinion of the Court was delivered by

MOSES, C. J.   By the eighteenth Section of the fourth Article of the Constitution, the Court of General Sessions is required "to sit in

(*a*) The names of the counsel have not been furnished.

each County in the State at least three times in each year, at such stated times and places as the General Assembly may direct." By "An Act to fix the time for the holding of the Circuit Courts in certain Counties herein mentioned," (15 Stat. at Large, 324,) the Court of General Sessions for the County of Chester was directed to be held "at Chester on the first Monday of January, and on the third Monday of March and September, and the Court of Common Pleas at Chester, for the County of Chester, on the first Wednesday after the first Monday of January, and on the first Wednesday after the third Monday in March and September." The term of the Circuit Court for the County of Chester which commenced on the first Monday of January, 1876, adjourned on Saturday, the eighth day of the same month, as appears by the following entry on the minutes: "Saturday, January 8, 1876, the Court then adjourned for the term, and directed the Clerk to enter in the journal that the Court adjourned from day to day, but without any date being fixed for its reassembling." It further appears that on January 24, 1876, the following order was made by the Circuit Judge: "State of South Carolina, Chester County.—It is ordered that the Sheriff of Chester County do forthwith proceed to summon the grand and petit jurors to be and appear at the court house, in Chesterville, at 10 o'clock next Monday morning, the 31st instant, for the trial of John Lilly et al., charged with burglary and larceny, and of such other cases as may be brought before them pursuant to law." By virtue of said order the jurors were summoned, appeared, and the Judge presiding, a Court legally organized, as was supposed, proceeded to what must have been regarded as the principal object for which it had convened.

A bill for grand larceny was presented to the persons who were said to constitute the grand jury against the said John Lilly, which, on being returned "true bill," he was tried by the persons sitting as a petit jury, a verdict of guilty returned, on which he was sentenced and committed to the Penitentiary for the space of nine years. Being in custody of the Superintendent of that institution, he now is brought before us by a writ of habeas corpus, and claims a right to be discharged, because detained without lawful authority, his detention being, as he alleges, under the sentence of a Court, or a tribunal acting as such, without due power by law to control his person. In fact the whole proceeding, from the bill to his committal to his present custody, is challenged as void in law.

The term of the Circuit Court for Chester which commenced on the first Monday in January, 1876, necessarily ended at 12 o'clock of the night of the succeeding Saturday, for, by the Act already referred to, the term for the County of York was to commence at Yorkville on the Monday next thereafter. The order of January 8, 1876, by its very terms operated as an adjournment of the session for Chester, and the direction of the Court to the Clerk "to enter in the journal that the Court adjourned from day to day, but without any date being fixed for its reassembling," could not affect or qualify the express adjournment, which was not only announced by the Court and entered on the journal, but was required by law.

The Court for the County of Chester could not at the same time be in session and not in session, nor could it be regarded in session from its adjournment on 8th January, 1876, until the Saturday night following the 14th (Monday) of January, 1876, for during all the time within those dates the Judge was required to preside over and hold the other Courts of his circuit. The order, too, is contradictory in itself, for an adjournment from day to day necessarily implies a day fixed for meeting, to wit, each day succeeding the daily adjournment.

Whence did the Circuit Judge derive his power to convene the Court for Chester by the order which he signed on 24th January, 1876,—the day when, by the Act, he was required to hold his Court at Yorkville for the County of York? In vain we look to the statutes for any authority which empowers him to issue an order directing the Sheriff to summon grand and petit jurors to appear at the court house of a County for the trial of any particular party, much less before any bill has been presented against him. How, after the adjournment of the Court of Chester, could he officially know that the petitioner, John Lilly, was charged with "burglary and larceny?" No bill had been then given out, and we are not aware of any other mode by which it could have been brought to his judicial notice, unless on some proceedings for bail.

Full and ample provision has been made for special terms of the Court of General Sessions and Common Pleas in aid of the expeditious disposition of all the business which may be brought before them. Continuing each Court of a Circuit in session from day to day until the time fixed by law for its next meeting is inconsistent with the statutes, which prescribe the time to be allotted to each Court of a Circuit by requiring the Judge on some named succeeding day to hold some other Court of his Circuit.

It is not difficult to perceive the serious and disastrous conse-
quences which might follow if a Judge were at liberty to call a
term of his Court at his discretion to try either a particular case
or any cases over which it might have general jurisdiction. It
will be conceded that they would not likely be the less to be appre-
hended because the Court was called without any public notice, on
a mere order directing the Sheriff to summon the grand and petit
jurors to meet at the court house for the trial of a particular case,
"and of such other causes as may be brought before them pursu-
ant to law."

In our judgment, the proceeding by which the prisoner has
been convicted and committed to the Penitentiary is without legal
authority. While he must be released from his present custody,
he must be remitted to the Sheriff, to be detained until discharged
in conformity with the order heretofore filed.—(See *Ex Parte
DeHay*, 3 S. C., 564.

*Wright*, A. J., and *Willard*, A. J., concurred.